Eddy *v*. City of Buckner.

5-1319                                             302 S. W. 2d 85

Opinion delivered May 20, 1957.

*Wendell Utley,* for appellant.

*Henry B. Whitley,* for appellee.

Sam Robinson, Associate Justice. The City of Buckner, Arkansas adopted an ordinance submitting to the voters of the city the question of a $12,000 bond issue to finance the construction of a water system. In the case at bar, the appellant, N. L. Eddy, is contesting the validity of the bond issue. The chancellor made a finding in favor of validity, and Eddy has appealed.

Appellant contends there was error in the schedule of bond maturities as set out in the notice of the special election caused to be published by the Mayor, and it is further maintained that the ballot title contained a similar error. Appellant says that, notwithstanding the fact that all of the citizens voting on the question cast their ballots in favor of the bond issue, it was rendered invalid by the alleged errors. The ordinance provides for a $12,000 bond issue, and the maturity dates of the bonds as set out in the ordinance are as follows:

"In the year 1960 $500; in the year 1962 $500; in the year 1964 $500; in the year 1966 $500; in the year 1968 $500; in the years 1970 to 1984, both inclusive, $500; in the years 1985 and 1986, both inclusive, $1,000."

The Sheriff's proclamation of the election gave the correct total of bonds to be issued and the correct maturity dates, as provided by the ordinance. The maturity dates as shown by the notice published by the Mayor,

and the maturity dates appearing on the ballot title are incorrect. They are as follows:

"The question to be voted upon at said election is whether or not the City of Buckner, Arkansas, will issue $12,000 in negotiable serial, coupon bonds bearing interest at not in excess of $3\frac{3}{4}\%$, due as follows:

"In the year 1960, $500; in the year 1962 $500; in the year 1964 $500; in the year 1966 $500; in the —— 1968 $500; in the years 1970 to 1984, both inclusive, $1,000."

The notice published by the Mayor and the ballot title were correct with reference to the total amount of bonds to be issued: $12,000. But, it will be seen that, according to the incorrect maturity dates, the bonds add up to $17,500; hence, if the voters were misled at all it was to the effect that a larger amount of bonds were to be issued than the amount authorized. If the voters had been led to believe that the bond issue would be for a smaller amount than the actual amount of bonds to be sold, then they would have a legitimate cause of complaint; but it is hard to conceive of any one complaining that he was misled into voting for a larger amount than would be issued. This would be like a person protesting the installation of the water system because it did not cost more. In the *Harvard Law Review,* Volume 70, Number 6, page 1079, it is said: "But most courts have recognized that a defect in the statement of the technical financial provisions of a bond issue is unlikely to affect the choice of the electorate and have thus regarded such defects as insubstantial."

The City of Buckner has a population of about five hundred. There were seventy-four citizens who cast their votes in favor of the bond issue; there were no votes against it. The complaint does not allege that any one was misled by the mistakes as to the maturity dates of the bonds, as shown in the publication of notice by the Mayor or in information appearing on the ballot.

In discussing the subject of election on indebtedness, or bond issues, it is said, in *McQuillin Municipal Cor-*

*porations,* 3rd Edition, Volume 15, page 279: "While a taxpayers' suit may be maintained to test the validity of the election, in the absence of fraud, or attempt to mislead the voters, or express declaration in the law to the contrary, mere irregularities, which do not prevent a full and free expression of opinion of the will of the electors, and do not affect or change the result, will not invalidate the election."

Affirmed.